# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: | |
| Bryan S. Reichel, | Case No.: 11-32923<br>Chapter 7 Case |
| Debtor. | |

## RESPONSE BY GEORGE ANDERSON AND 7TH RIG, LLC TO VARIOUS PLEADINGS SET FOR HEARING APRIL 6, 2022

George Anderson ("Anderson") and 7th Rig, LLC ("7th Rig"), through their undersigned attorneys, hereby offer this response to various pleadings set for hearing on April 6, 2022 pursuant to the Amended Order Setting Hearing [Docket No. 292].

In explaining the Debtor's sentence for his convictions for wire fraud and bankruptcy fraud, Judge Wright stated:

> "Mr. Reichel, you executed a long and complicated fraudulent scheme and you have not been truthful about or accepted responsibility for your conduct."

U.S. v. Reichel, 14-CR-00298 [Docket No. 247, 48:2-4]. The Debtor's continued barrage of pleadings, baseless accusations aimed at his *victims*, and abuse of legal form and process shows that Judge Wright's assessment is just as accurate today as it was nearly five years ago when that sentence was imposed. The Debtor continues to refuse to admit that he did anything wrong and is attempting to relitigate his criminal trial in a different forum.

**A. Background.**

1. Anderson timely filed a proof of claim in the Debtor's chapter 7 bankruptcy case on March 8, 2012, *over ten years ago* (the "Anderson Claim") [Claim No. 20]. As more fully described in the Anderson Claim, Anderson made various loans to the Debtor and to PureChoice,

Inc. ("PCI"), a company formed by the Debtor and of which the Debtor was the president until the fall of 2010. Anderson also made investments in PCI. All of Anderson's loans to the Debtor or to PCI, conversions of the loans to PCI common stock, and investments in PCI were induced by the Debtor's fraudulent or negligent misrepresentations and omissions with respect to, among other things, the financial health of PCI and the value of its shares. Thus, in addition to claims based on amounts owed by the Debtor pursuant to the promissory notes, Anderson had claims against the Debtor, in his individual capacity, for the Debtor's tortious conduct of making fraudulent or negligent misrepresentations and omissions.

2. 7th Rig also timely filed a proof of claim in the Debtor's bankruptcy case (the "7th Rig Claim") [Claim No. 21]. As more fully described in the 7th Rig Claim, 7th Rig asserted claims against the Debtor for: (1) fraudulently inducing 7th Rig to make loans to PCI; and (2) a claim by PCI against the Debtor for unauthorized payments from PCI to the Debtor, which claim 7th Rig held as the owner of substantially all of the assets of PCI.

3. In March 2012, Anderson and 7th Rig, through their attorneys, sent a copy of documentation supporting the Anderson Claim and the 7th Rig Claim to the Chapter 7 Trustee and to the Debtor's attorney.

4. The Debtor did not object to the Anderson Claim or the 7th Rig Claim.

5. In November 2012, many months after the Anderson Claim and the 7th Rig Claim had been filed, the Debtor waived his discharge [Docket Nos. 107, 108, 110].

6. On August 24, 2015, the Chapter 7 Trustee filed an interim final report (the "Interim Report") [Docket No. 157], which provided that the Anderson Claim was to be allowed in the amount of $13,094,909.00 and the 7th Rig Claim was to be allowed in the amount of

$2,275,054.51. The Interim Report also reflected that the Anderson Claim and the 7th Rig Claim were timely filed.[1]

7.    The Debtor filed an objection to the Interim Report [Docket No. 160], but then withdrew his objection [Docket No. 163]. After administration of the case, the Chapter 7 Trustee filed her Final Report [Docket No. 177], showing the allowance of the Anderson Claim in the amount of $13,094,909.00 and the 7th Rig Claim in the amount of $2,275,054.51 and proposing a distribution of roughly 0.2%. No party objected to the Final Report. Distributions were made and, on March 28, 2017, the bankruptcy case was closed.

8.    Meanwhile, in 2014, the Debtor was indicted on multiple counts of wire fraud in connection with his actions regarding PCI. The government later added additional counts of bankruptcy fraud. *See* U.S. v. Reichel, 14-CR-00298 [Docket No. 35]. George Anderson and David Anderson provided evidence and testimony in connection with the trial, including regarding the damages suffered by George Anderson and 7th Rig. The Debtor was convicted of seven counts of wire fraud and four counts of bankruptcy fraud. U.S. v. Reichel, 14-CR-00298 [Docket No. 210].

9.    After trial, Judge Wright found that the Debtor's fraud had caused damages to investors in and lenders to PCI, including Anderson and 7th Rig, of approximately $28 million. U.S. v. Reichel, 14-CR-00298 [Docket No. 247, 24:13 to 27:18.]. This included the damages suffered by George Anderson and 7th Rig as set forth in the Anderson Claim and the 7th Rig Claim.

---

[1] The Debtor inaccurately asserts that both claims were untimely. Pursuant to the Notice of Assets and Notice to Creditors to File Claims [Docket No. 58], proofs of claims were due by March 8, 2012.

3

10. The Debtor appealed his criminal convictions and sentence on multiple grounds, including that the convictions were not supported by sufficient evidence and that the District Court incorrectly determined the investors' actual losses. The Eighth Circuit Court of Appeals affirmed the judgment of the District Court, including the Debtor's convictions and the District Court's calculation of actual loss. *U.S. v. Reichel*, 911 F.3d 910 (8th Cir. 2018).

**B. The Debtor Lacks Standing.**

11. Anderson and 7th Rig incorporate their response filed March 23, 2022 and reiterate that the Debtor lacks standing to object to claims that were allowed many years ago.

**C. The Debtor Waived Any Objections To the Anderson Claim and 7th Rig Claim.**

12. The Debtor has been aware – *painfully aware* – of the existence of the Anderson Claim and the 7th Rig Claim for ten years. The Debtor was given multiple opportunities to raise objections to the claims. Because he failed to do so, the Debtor has waived any objections that he might now try to manufacture.

13. "Waiver is an intentional abandonment or relinquishment of a known right or advantage which, but for such waiver, the party would have enjoyed." *Caisse Nationale De Credit Agricole v. CBI Industries*, 90 F.3d 1264, 1275 (7th Cir. 1996) (citations omitted).

14. It is beyond dispute that the Debtor had notice of the claims. In March 2012, the claims were filed with the Bankruptcy Court and the attorneys for Anderson and 7th Rig sent a copy of the claims with supporting documentation to both the Chapter 7 Trustee and the Debtor's attorney. In 2015, the Chapter 7 Trustee's Interim Final Report identified the claims as allowed claims. The Debtor objected to the Interim Final Report (on a different basis) and then withdrew his objection. In 2016, the Chapter 7 Trustee's Final Report again identified the claims as allowed claims and proposed a pro rata distribution.

15. The Debtor had repeated notice of the Anderson Claim and the 7th Rig Claim. He was given multiple opportunities to dispute allowance of the claims. Instead, he took no action for many years. The Debtor has waived any objections to the Anderson Claim and the 7th Rig Claim.

**D. It Would Be Inequitable to Permit the Debtor's Untimely Claim Objections.**

16. Although the Federal Rules of Bankruptcy Procedure do not set a deadline for when claim objections must be made, other principals of law do. The doctrine of laches and general principals of equity bar the Debtor's untimely objections.

17. "Laches is an equitable doctrine premised upon the same principal that underlies the statute of limitations: the desire to avoid unfairness that can result from the prosecution of stale claims." *Axcan Scandipharm Inc. v. Ethex Corp.*, 585 F. Supp. 2d 1067, 1081 (D. Minn. 2007). Bankruptcy courts apply the doctrine of laches to protect creditors from prejudice caused by claim objections filed years after distributions have been made.

18. For example, *In re Templeton*, 538 B.R. 578, 592 (Bankr. N.D. Ala. 2015), the bankruptcy court found that the debtor's objection to a claim late in a chapter 13 case was barred by laches. The court noted that disallowance would raise other issues, such as the propriety of recovering and re-distributing amounts paid to creditors, particularly where the debtor failed to provide an excuse for not objecting in a reasonable time. Because the prejudice to creditors and the trustee (who would be required to do the redistribution) outweighed any harm to the debtor or other creditors who had an opportunity to object and did not do so, the court found the claim barred by laches.

19. Similarly, in *In re Shook*, 278 B.R. 815, 829 (B.A.P. 9th Cir. 2002) the Bankruptcy Appellate Panel for the Ninth Circuit recognized that "when an action is not subject

5

to a statute of limitations, the equitable doctrine of laches may alternatively limit the time within which the action must be brought." The BAP found that the debtor's objection to a claim brought after its chapter 13 plan had been confirmed and nearly completed, and after the debtor had known for years about the treatment of the claim, was barred by laches because the debtor had "simply waited too long to object".

20. Laches requires two elements: "(1) a plaintiff must have unreasonably and inexcusably delayed commencing his action and (2) the defendant must have suffered prejudice as a result." *Axcan Scandipharm Inc. v. Ethex Corp.*, 585 F. Supp. 2d 1067, 1081 (D. Minn. 2007) (citations omitted); *see also Dryer v. Nat'l Football League*, 55 F. Supp. 3d 1181, 1203 (D. Minn. 2014), aff'd, 814 F.3d 938 (8th Cir. 2016) (citing *Hubbard Feeds, Inc. v. Animal Feed Supplement, Inc.*, 182 F.3d 598, 602 (8th Cir. 1999)) ("Laches applies when a claimant inexcusably delays in asserting its claim and thereby unduly prejudices the party against whom the claim ultimately is asserted.")[2]

21. The Debtor's delay in raising his objections to the Anderson Claim and the 7th Rig Claim is unreasonable and inexcusable. As described above, the Debtor knew of the Anderson Claim and the 7th Rig Claim since 2012 and received repeated notice of the claims. Even more strikingly, these claims formed the basis of the Debtor's criminal conviction, restitution award, and sentence, which were all upheld on appeal. The Debtor was represented by counsel in both his bankruptcy case and his criminal case. He made no effort to object to the claims until 2019, over seven years after the claims were filed and several years after

---

[2] Bankruptcy courts also apply general principals of equity to arrive at the same result. *See, e.g.*, *In re Armstrong*, 434 B.R. 120, 129 (Bankr. S.D.N.Y. 2010) (refusing to permit claim objection filed years after confirmation and after entry of a discharge order in a chapter 13 case on the basis that it would be inequitable and unfair to creditors).

distributions had been made and the bankruptcy case had been closed. That is simply unreasonable and inexcusable.

22. To allow the Debtor's claim objections at this point would be prejudicial to Anderson and 7th Rig. The claims are based on numerous transactions that occurred well over a decade ago. Even more importantly, the claims are also based the Debtor's fraudulent and tortious conduct that also occurred well over a decade ago. The Debtor seems to think his liability is limited to loans that he personally guaranteed. That is emphatically not true. One could conduct an entire trial spanning several weeks to prove up the claims, *which is exactly what the United States of America has already done*. The criminal trial involved testimony from 30 witnesses and literally hundreds of exhibits, which proved beyond a reasonable doubt that the Debtor committed fraud and established that his victims suffered over $28 million in damages. It would be tremendously unfair to Anderson and 7th Rig to require them to re-litigate the Debtor's criminal trial on their own dime in order to protect their miniscule distribution in the bankruptcy case. The allowance of the claims resulted in a distribution of just 0.2%, or about $30,000, which is quickly being consumed in responding to the Debtor's dozens of repetitive, false and inflammatory pleadings.

23. The doctrine of laches and general principals of equity bar the Debtor's untimely objections.

WHEREFORE, Anderson and 7th Rig respectfully request that the relief sought in various pleadings set for hearing on April 6, 2022, including the Debtor's untimely objections to the Anderson Claim and the 7th Rig Claim, be denied.

Dated: March 29, 2022

*/e/ James C. Brand*
James C. Brand (#387362)
Steven R. Kinsella (#0392289)
**FREDRIKSON & BYRON, P.A.**
200 South Sixth Street, Suite 4000
Minneapolis, MN 55402-1425
Telephone: 612.492.7000
jbrand@fredlaw.com
skinsella@fredlaw.com

**ATTORNEYS FOR GEORGE ANDERSON AND 7TH RIG, LLC**

75497684 v2